Good afternoon, everyone. Good afternoon, Judge Rovner. Good afternoon. Good afternoon. We are ready to begin and end the afternoon with one appeal right now. Case number 2522... Nope, not that one. Case number 252131, United States of America v. Jeffery Henson. And we welcome to the podium Ms. Barnaby. Thank you, and may it please the Court. Illinois police officers violated Mr. Henson's Fourth Amendment rights when they searched his vehicle almost 10 hours before they received a warrant where they discovered a backpack containing $17,390. Having unlawfully impounded his funds and the evidence of their existence until Mr. Henson's conviction was final, those funds were waiting on a silver platter until the government obtained a criminal judgment against him and successfully filed a citation to discover those assets. In order to deter such unconstitutional searches in the future, this Court should extend the exclusionary rule to motion for the turnover of property to satisfy a judgment. Ms. Barnaby, if the exclusionary rule applied, you argued that the government would have to present evidence as to the existence and ownership of the cash property and could not rely on the citation to discover assets which revealed the funds from the allegedly unlawful search. But here's the rub. Henson admitted in the sentencing commentary seven months before the government pursued a citation to discover assets that those funds existed and that they should be applied to restitution, as did his attorney who asked that it be applied to restitution. So my question is, why isn't that evidence independent of the search that establishes the existence of the funds and their availability for restitution, such that the exclusionary rule would have no real impact here? Your Honor, it's true that he did say that and his counsel did say that in the sentencing hearing. However, at the time, Mr. Henson did not understand or realize that he did not have the documents that showed that the seizure was unconstitutional. So at the time, he believed that the government had proper possession of those funds. And so we do not believe that that should suffice as sufficient evidence of those funds, nor should that be evidence of the fact that he... But this is a motion for a turnover order, not a 1983 action. Correct, Your Honor. And so the question that we're asking for purposes of a turnover order is whose money is it? And so that's where Judge Rovner is asking, wasn't that question answered at the sentencing hearing when Henson says, those are mine, that's my funds, and it should be utilized, irrespective of how, but he identified those proceeds as belonging to him. Why are we not done now with that admission? Well, Your Honor, those funds were received pursuant to an unconstitutional search and seizure. And so we believe that a 1983 claim is not going to be sufficient and that he... Mr. Henson actually opposed... It was not the United States that seized the proceeds. But they did turn over the funds, Your Honor. No, they didn't turn over the funds because they didn't possess them. They were in the possession of the police department who had seized the money out of Mr. Henson's vehicle. Well, and Mr. Henson did try and pursue, you know, in the Vermilion County Court, those funds through a writ of repleben after he realized that the funds had been unconstitutionally seized. And he attempted to recover via a writ of repleben, and the government responded that that was not the proper forum for his recovery. He had to bring it in federal court in the federal action, the criminal action that was pitted against him. And so that's what he did in opposing the turnover order at the time. What I'm wondering about, why should the exclusionary rule apply in this context at all, given that there is often no connection between the entity seeking the funds and those responsible for the constitutional violation? For instance, what reason is there to think that Danville officers, police officers, would be deterred from engaging in a constitutional search by the possibility that the federal government will not be able to seize the property in a subsequent restitution proceeding years later? Well, Your Honor, turnover proceedings are akin to asset forfeiture proceedings. They are quasi-criminal in nature, so the exclusionary rule should apply to them. And it should be... How is it punishing Danville Police Department? It would... Applying the exclusionary rule would deter state police officers, local police officers, and federal officers from seizing funds without a proper warrant. We do not see the fact that this was done by Danville police officers somehow to dilute the purpose of the exclusionary rule, which is to deter unconstitutional conduct. I have a different question for you, Ms. Barnaby, and it's about the fact that at base you are pursuing a Fourth Amendment claim on Mr. Henson's behalf. What are we to make of our case law that appeal waivers generally foreclose constitutional errors unless some narrow exceptions apply? And, you know, I'm looking at our case Bones, B-O-W-N-E-S, that lists some of these exceptions. Many of them don't imply a sentence based on a constitutionally impermissible factor like race, etc., etc. One of them is a proceeding lacking a minimum of civilized procedure. I don't take that to be your argument here. And so from there we get to case law like Kane, C-A-I-N, that a guilty plea constitutes a waiver of non-jurisdictional defects occurring prior to the plea, including Fourth Amendment claims. So we have cases that explicitly say you're waiving any non-jurisdictional defects that happened before a plea. Does that mean that an appellate waiver can continue to be knowing and voluntary, even in situations like here, if we take your position, Henson, he was not aware of a Fourth Amendment violation at the time he pled. Your Honor, I have not reviewed that case law and it's not been in the briefing by either the government or Mr. Henson. However... However, I don't think that that should prohibit him from recovering the funds in this case. Court, the only evidence of a Fourth Amendment violation that was presented by Henson is that property receipt, which Officer Wilson has written 1200 as the time of the search and circled AM next to it, which at best, of course, is ambiguous as to the time of the search. The time was written as 1200, not 12 colon 00, which reflects military time, not the proper designation of standard time. And 1200 in military time is noon. And I won't go through all the other facts that make it pretty obvious that it would have been noon. At any rate... Well, Your Honor, just to clarify there, it says 1200, but then AM is circled, which... I know, I just said that. Yeah, and so I think the AM though casts some doubt, right? It is at the very least ambiguous that it's not clearly military time, that it's not clearly noon. And you're referring, Your Honor, to the evidence that the government submitted on reply in the district court to say that it was military time. And that evidence was not considered by the district court in its decision, nor did Mr. Henson get to combat that evidence when it was presented. And so, and more to the point... I just question if we have the right party here as far as proceeding forward with a constitutional violation allegedly conducted by Danville Police Department. And how do we get to this constitutional violation in the motion for a turnover order? I don't know where we've extended it beyond that. And going back to the plea agreement question raised, there is language in that same plea agreement that says, I am consenting by any means the collection or the payment of the restitution order. And so how do we not find that this argument that you're making this afternoon is waived for purposes of answering whether or not the United States could pursue for purposes of satisfying the restitution order, I guess you would say they didn't waive the defenses, but go ahead. So the sentencing agreement does say that the sentence means in restitution order. You mean the plea agreement? I'm sorry, yes, the plea agreement. And it can be in the manner or method that the district court uses to determine, impose, announce, and or record the sentence. But Mr. Henson is not... It's not that section. Go to the next section right below it. Are you referring to the paragraph 49? Yeah. And so we're not saying, he's not trying to appeal his sentence or the restitution order. It's satisfying. And if you go, you're in paragraph 49. All right. And what's the next paragraph? I don't have it directly in front of me. Any manner or method the district court uses to determine, impose, announce, and or record the sentence. Is that what you're referring to? No, you go ahead and I'll find it for you.  But Your Honor, we're not appealing his sentence or his restitution order. But the turnover order itself. The turnover order is a post-judgment proceeding separate from the judgment. It's subject to independent finality requirements on appeal. And while he agreed that it could be enforced immediately and by any means in the agreement, it doesn't mean that he consents to the violation of his rights in the interest of enforcing restitution. In fact, defendants can contest enforcement where there is an error. You're into your rebuttal time, but we'll make sure to give you some rebuttal time. Do you need us to declare restitution proceedings quasi-criminal to win? Because, you know, we have this case law that restitution, it's a civil remedy. And if the overarching restitution scheme is civil, why would a turnover proceeding be quasi-criminal? So there's actually, this restitution is specific to the MVRA and restitution in the context of the MVRA is a criminal punishment. There's actually a Supreme Court case from earlier this year. Elgenberg? Ellingberg v. United States that explicitly says that the MVRA, restitution under the MVRA is a criminal punishment. And we would, while restitution has aspects of it being a civil or remedial proceeding, it is part of the sentence later and it's later enforced via turnover proceedings to penalize a criminal offense. So yes, we would say that it is quasi-criminal. And with that, I'll reserve the rest of my time. All right, thank you, Ms. Barnaby. And we welcome Mr. Hosler. You'll have to help me with the pronunciation of your name. May it please the court, counsel. I'm John Holster here on behalf of the United States. Jeffrey Henson used fake identities to steal millions of dollars from small businesses. And when he was caught, he threw himself on the mercy of the court, promising to give back the little money that was able to be recovered, approximately $17,000. And the government took him up on that. It is statutorily required, after all, to use civil enforcement proceedings to collect restitution on behalf of victims. And that's what the government did. It sought a turnover order directing the city of Danville to transfer that $17,000 to the clerk for the district court to be transferred to the victims. So Mr. Henson got what he wanted. Pursuant to the court order, the funds were transferred and disbursed to his victims 3 1⁄2 years ago, making those restitution funds essentially moot for purposes of this appeal. I do want to make sure I leave time to address mootness, as I think that's an important issue and jurisdictional in nature. But I'd like to speak a little bit to... I don't know if it's moot. I do want to spend some time talking about paragraph 41 of the plea agreement, where we were talking just a minute ago, and I was able to pull it up. And it says that the defendant acknowledges and understands that any and all financial obligations imposed by the court, including any fines and restitution, are payable immediately. Do you see where I am at paragraph 41? Yes, Your Honor. The next sentence says, he therefore consents to immediate enforcement by the United States by any means. That's where I was drilling down to as to would the turnover order fall under that language? Oh, absolutely. The turnover order was based under, specifically, 18 U.S.C. 3613, which section A is the civil remedies for enforcing restitution judgments. And that's what the United States did in this case by using the state of Illinois citation procedures. And so going back to Judge Jackson-Kumey's question in regards to have we moved from thinking of the case from the Supreme Court earlier this year, does that move it into quasi-criminal land based on the language used by the Supreme Court when looking at the mandatory Victims Restitution Act? No, Your Honor. In Ellenberg... Did you say no? I just didn't hear you. No, Ellenberg does not make restitution quasi-criminal. So in Ellenberg, it was a very narrow kind of threshold question that the Supreme Court answered, which is whether or not restitution could be punitive for at least doing an ex post facto analysis. The Supreme Court actually never held that it was an ex post facto violation in Ellenberg. It remained it to the Eighth Circuit, and that appeal is still pending in the Eighth Circuit. But the threshold issue in Ellenberg had to do with the restitution order itself, not the subsequent civil enforcement proceedings that occur. And there was no issue regarding turnover orders or the enforcement proceedings in Ellenberg, nor were there other kind of constitutional implications considered, such as, you know, maybe a right to counsel or...apologies... any other kind of dimensions as far as, like, that actual restitution order. Because our case is really about just the civil enforcement proceedings, not the restitution order itself. And counsel has kind of acknowledged they're not appealing that restitution order. Can I zoom out on this language that Judge Pryor...  You were asking a question. When you're done, I'll ask mine. Okay, thank you. This consents to immediate enforcement by the United States by any means. What is your serious response to Mr. Henson's concern that surely this can't mean that if there is a constitutional error lurking out there somewhere that a person would have no recourse? The United States could violate constitutional principles in enforcing. Surely this paragraph can't mean that. Your Honor, I think in this case it goes to some of the questions I believe it was Justice Pryor asked earlier about the import of the plea agreement and what it weighs as far as pre-plea events, including Fourth Amendment violations. So that's what we have in this case where he's entered the guilty plea. Mr. Henson has also never disputed that he had the property receipt at issue before entering the guilty plea. There's been some comments about he didn't notice it or he didn't, you know, appreciate the significance in his view of that property receipt. But the plea agreement itself weighs those pre-plea events including any Fourth Amendment claims that he might have. And, you know, that's kind of where we find ourselves here. So he's aware of the argument or at least he could potentially be aware of the argument. He's entered this plea agreement. He's certainly aware of the funds. And then... He admits at the sentencing hearing that those are my funds. Absolutely. And I know counsel has indicated here that he was not aware of that at the time, but at least on page 14 of their brief, they write that the magistrate's hearing on the turnover order, Mr. Henson explicitly said he did not know that the property had been illegally seized until his sentencing hearing. It's that same sentencing hearing where he's making these emphatic representations that he wants that money applied to restitution. You know, you have argued that we cannot... We can't grant... Because the funds have already been distributed. But I'm trying to figure out what would prevent our court from ordering the recoupment of the special assessment that is retained by the government in the Treasury's Crime Victim Fund. You know... Take a look at United States v. Hayes, for instance. Yes. And the argument about the Crime Victim Fund, just to be clear, that's not completely fleshed out in the record. That was raised for the first time in the reply brief for this oral argument here today, despite everything else that's happened. Based on the record, the exhibit that's in the record below, we know that the money was applied to the special assessment in the district court. I suppose the court could take judicial notice as to whether or not those funds have left the deposit fund of the district court below and gone to the Treasury, to the Crime Victim Fund, but that's not in the record. Most fundamentally here is the government's restitution under 18 U.S.C. 3613C. This is a lien on all of an individual's property. And what's kind of unique, Justice Roe, the situation you're talking about, about returning of special assessments, does occur in situations where someone's conviction has been vacated. So they no longer are considered, quote, a person convicted of an offense under 18 U.S.C. 3013. So there's no rest... Once your conviction's vacated, the lien is gone. That's not what we have here. Mr. Henson has never... So we're no longer arguing you can't get a refund. I'm sorry? We're no longer arguing that you can't get a refund. Well, what I'm saying is, even if the government has the special assessment, we have a lien on that as well so that it wouldn't be returned to Mr. Henson. The limiting principle is where Judge Roe there is going. That's what she's asking you to answer. I apologize. Are you suggesting that if there was a mistake made, there was nothing that Mr. Henson... Pulling this mootness thread. Sure. There was nothing that Mr. Henson could do or the government could do to correct a wrong. No. Certainly, Mr. Henson has his civil remedies. As of course, we're in the size of the brief, he's got a 1983 suit pending against the city of Danville. In the Tenth Circuit case, the on Neil Deng case that also deals with the Fourth Amendment and turnover orders, that panel as well found that a civil remedy was the appropriate remedy in that case. Look, your argument is that the case should be dismissed. It's moot based on the inability to obtain effective relief. Well, any relief is enough to avoid such dismissal. Sure. And the potential return of the special assessment fee would be sufficient. Your Honor, I respectfully disagree in that the lien under 18 U.C. 3613 C applies to all of Mr. Henson's property, including the $212 and some change that was applied to the special assessment. And that lien is enforced like a tax lien, and there are very narrow categories of property that could be exempt from the lien, such as maybe a mortgage or something with a secured property interest created before the lien attached. But Mr. Henson has never argued that anybody has a superior lien to the government over his property. In fact, he's kind of to the contrary. He's made comments, I think, on page 42 of his brief. He's been a little bit cagey as to what he would do with this money. He mentions paying his mother, an attorney, child support. I think that's all a pretty strong indication that he would do whatever he wants with it because there's no secured interest out there, and you wouldn't have a secured interest on a pile of cash anyway. But just on a broader principle that you're arguing, that restitution can't be refunded because it's already been dispersed to the victims. Why shouldn't we read Nelson v. Colorado as telling us that restitution absolutely can be refunded? So in Nelson, I would encourage the court to look closely at Justice Alito's concurrence in that case because it was very much... Well, Nelson also included a situation where the person's conviction had been invalidated, which is not the situation here, so we still have the lien in our case. I think in Justice Alito's concurrence, it's clear that the court is under the impression that the funds are still in the government's possession and still capable of being returned, but that's not the situation that we have here. But it is the situation we have here. It is in the United States Treasury's crime victim fund. The court could take judicial notice. As I stand here today, I don't know. And then one other kind of caveat on that is in order for funds to be distributed from the Treasury, there must be an appropriation for those funds. And Mr. Henson hasn't identified what that authority or appropriation would be that would allow funds to be transferred from the Treasury to be returned to a person who has not had their conviction overturned, vacated, pardons, forgiven in any kind of way. I'd like to go back to... I believe it was Judge Jackson-Nikumi's question because the parties appeared to see-saw between describing the proceedings as civil, criminal or quasi-criminal. So I may have missed it when you were responding earlier, but how do you think the motion for a turnover order should be characterized? And would that characterization ultimately make any difference in this case? Well, this court has kind of recognized that restitution enforcement proceedings and I think turnover proceedings are civil proceedings just perhaps more for convenience that they occur under a criminal docket number. We view these as civil enforcement proceedings, collection proceedings. That's what 3613A calls them in its title. And the Supreme Court has made it very clear that the exclusionary rule does not extend outside of criminal cases and criminal trials. And here we are talking about a civil collection proceeding. Okay. Thank you. If there are no further questions from the court, the government will rest on the submitted briefs and ask that the appeal be dismissed or in the alternative, the judgment below be affirmed. Thank you, Your Honor. Okay. Thank you, Mr. Hosler. Ms. Barnaby. Mr. Hosler has left some time on the clock, which benefits us all, so you can have your three minutes. Just two quick points, Your Honor. First about the plea agreement. Paragraph two of the plea agreement says that this agreement concerns criminal liability only. Mr. Henson is not contesting his plea. We're not contesting the restitution order itself. We're contesting the manner in which it was enforced. We're contesting post-plea conduct, which is using unconstitutionally seized funds. This is post-sentencing conduct, not just simply post-plea conduct. Yes, Your Honor. Post-sentencing conduct that... So asking the same question that Judge Robner posed to the colleague on the other side, how are you characterizing the motion for a turnover order, civil, criminal, quasi-criminal? We characterize it as quasi-criminal, Your Honor, because it is the way to enforce restitution, which is pursuant to a criminal sentence, and so it is quasi-criminal in that way. It might use civil mechanisms to enforce it, but it is a part of the overall criminal proceeding, and so it has civil and criminal aspects to it, so that's why we would characterize it as quasi-criminal. The second quick point that I'd like to make is about Mr. Henson's commentary at the sentencing hearing. He wouldn't have been there to talk about the sentencing hearing, or he wouldn't have talked about it had the funds not been unconstitutionally seized. Mr. Henson would have used those funds to pay his lawyer, to pay for child support, and that's what we asked for on remand, is that he would be allowed to prove up how those funds would not have been there but for the unconstitutional seizure. With that, if there are no further questions... Thank you. I do, Ms. Barnaby, one last question. If the district court... Do you concede that if the district court were to find that the search was lawful, that Mr. Henson would not have a way to assert a claim to the money that was seized? If the district court were to find that the seizure was lawful, then yes, I think that we would not be here today. Okay. All right. Thank you. Thank you. Thank you to both parties and also to attorneys for Mr. Henson for accepting the appointment of the court. You have our thanks. And with that, we stand in recess.